IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:20CR83-1 |
| ) | |
| AUGUSTINE PEREZ, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Before the Court is a Motion for Compassionate Release, (ECF No. 29), filed by Defendant on August 7, 2023. The Government filed its Response, (ECF No. 32) opposing Defendant's Motion on September 19, 2023. This Court, having considered both arguments of the parties, finds that Defendant has shown extraorindary and compelling reasons to support a sentence reduction, however, further finds that the factors in 18 U.S.C. § 3553(a) weigh strongly against release. For the reasons stated herein, Defendant's motion will be denied.

**I.   BACKGROUND**

Defendant is sixty-eight years old and on June 22, 2022, was sentenced to 46 months following the revocation of his supervised release. (ECF Nos. 29 at 1; 32 at 2.) The Defendant was oringally sentenced in March of 1991 for conspiracy to possesses with intent to distribute cocaine; possession with intent to distribute; distributing cocaine; possessing cocaine with intent to distribute on school property; and possessing a firearm during a drug trafficking

offense to 322 months total imprisonment to be followed by a term of supervision for ten years. (ECF No. 1 at 19.) Following twenty-three years of imprisonment, Defendant's supervised released commenced on August 29, 2014. (ECF No. 3 at 2.)

Defendant is an inmate at FCI Ashland and is "eligible for early release for good conduct time" on June 30, 2025. (*See* BOP Inmate Locator, at https://www.bop.gov/inmateloc/ (last accessed March 4, 2024); *see also* ECF No. 32 at 3–4.).

## II. ARGUMENTS OF THE PARTIES

Defendant, in his motion for Compassionate Release, states that he suffers from serious physical and medical conditions, including heart failure, a quintuple bypass in May 2022, chronic ischemic heart disease, hyperlipidemia, diabetes, high capillary glucose levels, glaucoma, and chronic sciatic nerve and back pain. (*See* ECF Nos. 29 at 1–3.) Additionally, at his supervised release violation hearing, Defendant's counsel stated that before his open-heart surgery his physicians were considering spinal surgery to address his back pain. (ECF No. 31 at 11.)

Defendant contends that the inadequate medical treatment he is receiving at the Bureau of Prisons ("BOP") qualifies as an extraordinary and compelling reason warranting release. (*See* ECF No. 29 at 1–4.) First, Defendant asserts that his multiple medical conditions paired with his deteriorating physical health due to his age meet the creteria in 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 29 at 4.) Second, he claims that the BOP is not providing the adequate medical attention he needs for his various conditions. (*See* ECF No. 29 at 2–3.) Specifically, the Defendant argues that the medical providers at FCI Ashland had not received his medication information from his pervious jail for his heart condition or to treat his glaucoma, he has been at an insufficient dosage of his pain medication, his request to see a

2

Case 1:20-cr-00083-LCB    Document 36    Filed 02/10/25    Page 2 of 13

dermatologist for his skin issues has been denied, he has yet to see a physician while at FCI Ashland, his capillary glucose levels are too high, and that he was prescribed a medication with negative side effects for people with heart failure. (ECF Nos. 29 at 1–3; 33 at 3–4.) Defendant also argues that both him and his counsel have reached out to FCI Ashland Health Services prior to this Motion and had either not received replies or insufficient responses regarding when the Defendant could see a physician or when his medication would be transferred. (ECF No. 29 at 2–3.) Furthermore, Defendant claims it was only after this Motion was filed that he was schedule to see a cardiologist. (ECF No. 33 at 1.)

The Government argues that although Defendant's health conditions are serious, they are being treated by BOP, and therefore fails to provide an extraordinary and compelling reason warranting sentence reduction under § 3582(c)(1)(A)(i). (ECF No. 32 at 4.) First, the Government states that there is no evidence that the Defendant's conditions have worsened while in custody. (ECF No. 32 at 8.) Additionally, the Defendant has not provided specific medical measures that BOP's medical personnel should be doing to better manage his conditions. (ECF No. 32 at 8.) The Government directs this Court to the "voluminous medical records" to indicate that he is receiving adequate treatment and has had numerous clinical encounters to address any issues. (ECF No. 32 at 9.) According to the Government, the BOP has managed all the Defendant's medical concerns and have taken measures to monitor his conditions; such as providing the Defendant a glucometer to manage his diabetes and prescribing an EKG to monitor his heart. (ECF No. 32 at 9–11.)

The Government also contends that if this Court finds extraordinary and compelling circumstances, the § 3553(a) factors strongly counsel against an early release. (ECF No. 32 at 14.) The Government argues that the similarilty in the nature of the offense between the

Defendant's supervised release violations and original conviction indicate a lack of deterrence. (ECF No. 32 at 15.) In addition, the Government points to the Defendant's criminal history to argue that early release is concerning from a "public safety perspective." (ECF No. 32 at 16.)

## III. DISCUSSION

The Defendant must demonstrate the following for the Court to order a sentence reduction under 18 U.S.C. § 3582(c)(1)(A): (1) that he has exhausted all applicable administrative remedies;[1] (2) that extraordinary and compelling reasons warranting sentence reduction exist; and (3) that the § 3553(a) factors weigh in favor of sentence reduction. The Court must also find that Defendant does not pose a danger to any other person or to the community. U.S.S.G. § 1B1.13(a)(2); 18 U.S.C. § 3582(c)(1)(A).

### A. Exhaustion of Administrative Remedies

The parties agree that Defendant has met his burden to exhaust his available administrative remedies. (ECF No. 32 at 6 n.1.) Defendant made a request in writing for a sentence reduction to his warden on April 18, 2023, which was denied on June 30, 2023. (ECF No. 32 at 28.) As well over thirty days have passed since the request was made, the Court finds that Defendant has satisfied the exhaustion requirement. *See* § 3582(c)(1)(A); *United States v. Ferguson*, 55 F.4th 262, 268 (4th Cir. 2022).

### B. Extraordinary and Compelling Reasons

The Court may reduce a defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction." § 3582(c)(1)(A)(i). Prior to the amendments

---

[1] There is an exception to the defendant's burden of proof when there is a circumstance where it is more appropriate for the Court to direct the BOP to provide proof of exhaustion. *See United States v. Bolino*, No. 06-CR-0806 (BMC), 2020 WL 32461, at *2 (E.D.N.Y. Jan. 2, 2020). That is not the case here.

4

to the Sentencing Guidelines, U.S.S.G. § 1B1.13 (the compassionate release policy statement) only applied to motions filed by the BOP. The Fourth Circuit, in *United States v. McCoy*, held that district courts were "empowered to consider *any* extraordinary and compelling reason for release that a defendant might raise," rather than being constrained by the federal Sentencing Guidelines. 981 F.3d 271, 284 (4th Cir. 2020) (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)) (cleaned up). However, the amendments to the Guidelines that took effect on November 1, 2023, clarify that U.S.S.G. § 1B1.13 applies to compassionate release motions filed by defendants as well as by the BOP. U.S.S.G.§ 1B1.13(a) (U.S. Sent'g Comm'n 2022).

District courts in this Circuit are divided as to whether the amendments to § 1B1.13 apply to compassionate release motions made before they took effect. *Compare Lovelace v. United States*, No. 4:08-CR-00060-TLW-2, 2023 WL 9002690, at *3 (D.S.C. Dec. 28, 2023) (applying *McCoy* standard to motion filed before Guideline amendments took effect), *with United States v. Campbell*, No. 1:12-CR-439, 2023 WL 7220732, at *4 (M.D.N.C. Nov. 2, 2023) (applying the amended Guidelines), *and United States v. Evans*, No. 5:15-CR-00020, 2023 WL 8703403, at *2 (W.D. Va. Dec. 15, 2023) (same). The Court will apply the amended Guidelines.

The Court may determine that non-terminal medical conditions of the defendant may rise to the level of extraordinary and compelling reasons that warrant a sentence reduction if the "defendant is experiencing deteriorating physical . . .health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 3582(c)(1)(A)(b)(1)(B)(iii).

5

Here, the Defendant argues that based on his age, his multiple serious medical conditions, and the BOP's failure to provide adequate medical treatment warrants compassionate release. (ECF No. 29 at 4). Defendant presents evidence of serious medical conditions that "require ongoing monitoring and treatment." (ECF No. 29 at 1). On April 20, 2022, the Defendant had open-heart surgery after presenting with cardiac failure. (ECF No. 29 at 16). Additionally, the Defendant has glaucoma, diabetes mellitus, chronic ischemic heart disease, hyprlipidemia, high capillary glucose levels, and chronic sciatic and back pain. (ECF No. 32 at 29, 47, 59. 64, 82).

At the hearing that revoked his supervised release, Defendant presented evidence of his recent health conditions, including his recent quintuple bypass surgery, diabetes, glaucoma, spinal pain, and age, for the Court to consider home confinement as monitoring for his violations during supervised release. (ECF No. 31 at 6–12 (transcript of hearing that revoked supervised release)). Defendant asserted that while in custody at the county jail in Northern Neck, Virgina, he had not been able to adequately perform his prescribed physical therapy after surgery and had not seen his breathing apparatus machine that a nurse had given to him while he was at Forsyth County Jail. (ECF No. 31 at 9–10). While considering his changed medical conditions, this Court revoked his supervised release due to the § 3553(a) factors (*See infra* Part C.), and this Court acknowledged that the Defendant may receive better medical care at the BOP. (ECF No. 31 at 13– 14). The Court stated at the hearing that if the Defendant were to make a motion for compassionate release, he needs to show that the BOP is not in the best position to provide him his treatment. (ECF No. 31 at 24).

Defendant argues that since arriving to FCI Ashland, he has not received adequate medical care for his various conditions. (*See generally* ECF No. 29 (provides overview and

6

medical records that point to lack of care by BOP Health Services)). The Defendant provides six arguments that demonstrate the BOP's inadequate treatment of his medical conditions. (ECF Nos. 29 at 1–4; 33 at 3–4). First, Defendant asserts that when he initially contacted Health Services to inform them that he was without the prescribed medication following his open-heart surgery and his glaucoma eye drops, the response was to "make a sick call." (ECF No. 29 at 1–2, 83, 90, 110). The record supports that the Defendant contacted Health Services and received two responses to "make a sick call." (ECF No. 32 at 342, 346). The Government presents documents to demonstrate that the Defendant has had over twenty-five clinical enounters with BOP medical staff from August 2022 to August 2023. (ECF No. 32 at 9, 29–55 (the administrative notes from clinical encounters attached to the Government's Response)).

Second, the Defendant claims that he has been without various medications while in custody at FCI Ashland. (ECF No. 29 at 1–2). The record supports that in September 2022, the Defendant was only prescribed two medications; one to address hyperlipidemia and one for chronic ischemic heart disease. (ECF No. 29 at 88–89). During a clinical encounter on September 26, 2022, the Defendant requested medications that had not been added to his transfer list. (ECF No. 29 at 87). The record suggests that as of August 2023, the Defendant has received four additional medications to address his chronic pain, diabetes, and glaucoma. (ECF No. 32 at 30). One issue of contention is that the Defendant claims the prescribed medication for his chronic pain is not adequately addressing his condition due to it being a significantly lower dosage than he was receiving from his physician prior to his incarceration. (ECF No. 33 at 3). The record supports that on May 17, 2023, a medical professional ordered an increased dosage for his chronic pain. (ECF No. 32 at 65). The Defendant claims that this

7

dosage is still lesser than he had prior to his imprisonment and is not adequate for managing his pain. (ECF No. 33 at 3).

Third, the Defendant argues that he is suffering from persistent skin eruptions and liasions that started in May 2023. (ECF Nos. 33 at 3–4; 32 at 61–62). The record does not support his claim that he has been recommended to see an outside dermotoglist to determine if it is skin cancer, (ECF Nos. 33 at 3–4; 32 at 61–62)., but he was prescribed two medications to address his skin issues in May 2023. (ECF No. 32 at 56–57, 61–62). Defendant's medical records indicates that ones medication did not work and he requested to see a dermatologist. (ECF No. 32 at 57). The record suggests that a second medication was prescribed and to follow-up at a sick call as needed. (ECF No. 32 at 57). There is no note made in the following clinical encounters regarding his skin condition. (*See* ECF No. 32 at 29–55). There is no evidence presented to support the Defendant's claim that his appointment with an outside dermatologist had been cancelled. (ECF No. 33 at 3–4).

Fourth, the Defendant contends that he has not been able to see a physician while at FCI Ashland despite having a scheduled visit in May 2023 that did not happen. (ECF No. 29 at 3). The record supports that on November 20, 2022, a physician's assistant scheduled a Chronic Care visit for the Defendant with a physician on May 23, 2023. (ECF No. 32 at 99). Defendant's medical records indicate that on May 23, 2023, he was seen by a medical professional[2], but not a physician. (ECF No. 32 at 61).

Fifth, the Defendant argues that his capillary glucose levels have been "routinely . . .well above the normal range." (ECF No. 29 at 1). The Government admits that

---

[2] The notes from the Clinical Encounter indicate that the Defendant was seen by an EMT-P. (ECF No. 32 at 61 (an emergency care technician paramedic)).

8

at one point the Defendant's glucose level was over 400 mg/dL while we was in a transfer facility before arriving to FCI Ashland, he has maintained levels below 300 mg/dL since being in BOP custody. (ECF No. 32 at 10). Defendant's medical records show the last reading available to the Court was on May 24, 2023; the Defendant's blood glucose level was 250 mg/dL. (ECF No. 32 at 59). The suggested normal range of blood glucose levels for adults with Type II diabetes is between 80–180 mg/dL.[3]

Finally, the Denfendant asserts that to treat the glaucoma in his eyes he was prescribed Timolol by the BOP clinic despite his history of heart failure; Timolol has contraindications for cardiac arrest. (ECF No. 29 at 3, 297). The Court recognizes that the difference between cardiac arrest and open-heart surgery as the Government highlights, (ECF No. 32 at 12 n.8), however, the Defendant had been admitted to the hospital for heart failure which led to the open-heart surgery. (ECF No. 29 at 15–16).

The Government argues that Defendant's conditions have not deteriorated further while in custody, and therefore, they are being treated properly. (ECF No. 32 at 8). However, the conditions do not need to be unforeseen at the time of sentencing to warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(e); *see also United States v. Bellamy*, No. CV151658JRTLIB, 2019 WL 3340699, at*4 (D. Minn. July 25, 2019).

The Court agrees with the Government that these individual conditions and failings by the BOP to treat specific conditions do not rise to the "grossly inadequate treatment" described by this Court in *United States v. Beck*. 425 F. Supp. 3d 573, 580 (M.D.N.C. 2019); (*see also* ECF No. 32 at 13). However, district courts have recognized delays in treatment and

---

[3] *Manage Blood Sugar*, CDC (last visited Apr. 01, 2025), https://cdc.gov/diabetes/managing/manage-blood-sugar.html.

9

medical conditions, when taken together, can provide the basis for compassionate release in certain circumstances. *See United States v. Verasawmi*, No. CR 17-254 (FLW), 2022 WL 2763518, at \*9 (D.N.J. July 15, 2022); *see also United States v. Burr*, No. 1:15-CR-362-1, 2022 WL 17357233, at \*7 (M.D.N.C. Dec. 1, 2022). In *Versawmi*, the court compared these circumstances to *Beck*, where a single life-threatening condition that the BOP failed to treat constituted an extraordinary and compelling reason for compassionate release. *Id.* at\*9. The defendant in *Verasawmi*'s medical conditions independently did not rise to the extraordinary circumstances standard, but when viewed in totality, the BOP's failure to treat or delayed treatment supported an early release. *Id.* Additionally, the court in *Versawmi* is concerned that certain treatment was not been given to defendant until after the motion of early release had been filed and the court intervened. *Id.* at\*10.

Here, the Defendant's independent conditions and treatment might not rise to the level of extraordinary and compelling, but when viewed in totality, favor an early release. Similar to the defendant in *Veraswami*, the Defendant claims that the BOP scheduled an appointment with a physician after this Motion was first made. (ECF No. 33 at 13). When Defendant first arrived at FCI Ashland, he was not receiving the amount of medication needed to treat his conditions. (ECF Nos. 29 at 87; 32 at 30). In addition, the Defendant is not scheduled to see a dermatologist regarding his skin liasions, (ECF No. 32 at 56), and has yet to see a physician while in BOP custody. (ECF No. 32 at 61). Furthermore, the Defendant was prescribed medication to treat glaucoma that has direct contraindications for heart failure while he is recovering from open-heart surgery and being treated for chronic ischemic heart disease. (ECF No. 32 at 12 n.8, 101). Finally, the Defendant has been reporting blood glucose levels that are dangerously higher than the normal range. (ECF Nos. 29 at 1–2; 32 at 10). Although

10

BOP has rectified his medication prescriptions, (ECF No. 32 at 30), and have taken other monitoring measures in regards to Defendant's medical conditions, (ECF No. 32 at 11), there have been shortcomings in his treatment that culminate to circumstances that warrant early release. When viewed in totality with his other serious physical and medical conditions, the Defendant has presented sufficient evidence to support that his circumstances are both extraordinary and compelling.

### C. 18 U.S.C. § 3553(a) Factors

Courts must also consider whether the applicable sentencing factors in 18 U.S.C. § 3553(a) weigh in favor of sentence reduction. *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024).

Among the various factors under § 3553(a), courts consider the following factors which this court find applicable here ; (1) "the nature and circumstances of the offense and the history and characteristics of the defendant" and (2) "the need for the sentence imposed" to reflect the seriousness of the crime, deter criminal conduct, and to protect the public. *See* 18 U.S.C. §§ 3553(a)(1)(a)(2) (2018); *see United States v. Trotman*, No. 20-6217, 2020 WL 7392287, at *2 (4th Cir. Dec. 17, 2020) (obliging district courts to consider § 3553(a) sentencing factors "to the extent they are applicable"); *see also United States v. Horne*, No. CR JKB-10-254, 2021 WL 514065, at*2 (D. Md. Feb. 11, 2021) (listing the first two subsections of § 3553(a) for consideration in a motion for compassionate release).

The Government argues that even if the Defendant has presented extraordinary and compelling reasons to warrant an early realease, the § 3553(a) factors do not support granting a motion of compassionate release.[4] (*See* ECF No. 32 at 14–17). The Court is required to

---

[4] The Defendant did not provide the Court with arguments regarding the § 3553(a) factors.

determine if the § 3553(a) factors weigh against sentence reduction in light of the finding of extraordinary and compelling circumstances. *See United States v. Malone*, 57 F.4th 167, 176 (4th Cir. Jan. 5, 2023). Even when considering a modification of sentence, Defendant's criminal conduct must still "be adequately addressed." *See Woodward v. United States*, 469 F. Supp. 3d 499, 502 (E.D. Va. 2020) (citing § 3553(a)(2)(A) – (C)).

On January 5, 2021, an emergency petition was issued outlining five alleged violations of Defendant's supervised release. (*See* ECF No. 6 at 1–3). A search of the home where Defendant was residing revealed three firearms, heroin, and cocaine. (ECF No. 22 at 1). Additionally, it was discovered that the Defendant had traveled to Virigina without the permission of his probation officer; and while he was in Virigina, he received a speeding ticket, but did not report the contact with law enforcement. (ECF No. 22 at 1–2). Furthermore, this Court found that the Defendant failed to notify his probation officer of a change of address. (ECF No. 22 at 3). During the execution of the search, the probation officer discovered a new address on prescription bottles and later confirmed that the Defendant's car was continuously parked at that residence. (ECF No. 22 at 3). The probation officer also testified that the Defendant was never at the listed address unless previously told that that the probation officer would be there. (ECF No .22 at 3). The defendant was arrested on March 24, 2022. (ECF No. 20 at 1).

During the hearing that revoked Defendant's supervised release, the Court observed that after serving a long sentence, the Defendant "conducted life as though he was free from the court system." (ECF No. 31 at 14). Defendant's supervised release was revoked due to violations that reflected same or similar conduct that the Defendant was charged with in his original conviction. (ECF No. 22 at 4–5). The Defendant served twenty-three years, which

12

did not serve as a deterrent to commit violent crimes. (ECF Nos. 32 at 16; 31 at 14). The nature of his convictions weigh against a reduced sentence when compared with public safety. (ECF No. 32 at 16 (including grand larceny, robbery, attempted murder, possession with intent to distribute on school property)).

Defendant has presented no evidence that he has participated in any rehabilitation programs specific to his conviction to demonstrate further criminal activity would be deterred. *See Coleman v. United States*, 465 F. Supp. 3d 543, 550 (E.D. Va. 2020). Additionally, during the hearing that revoked his supervised release, this Court instructed the Defendant to prepare a plan for what is release would entail if he planned to file a motion of compassionate release based on his medical circumstances. (ECF No. 31 at 27). The only plan that the Defendant proposes is to "live at home with his family." (ECF No. 29 at 4). This Court agrees with the Government that this plan does not alter the analysis and the § 3553(a) factors weigh against early release.

Defendant's repeated history of violent offenses disfavors sentence modification. Defendants' motion will be denied.

For the reasons stated herein, the Court enters the following:

### ORDER

**IT IS THEREFORE ORDERED** that Defendant's Motion for Compassionate Release, (ECF No. 29), is **DENIED**.

This, the 10th day of February 2025.

/s/ Loretta C. Biggs
United States District Judge